FILED
2010 Mar-24  PM 01:22
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| VICKI WRIGHT, individually and as class representative, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No. CV-07-S-2071-NE |
| DEPARTMENT OF ALABAMA VETERANS OF FOREIGN WARS, an Alabama corporation or organization; G2 INC., a/k/a G2 OPERATIONS, INC., an Oklahoma corporation; GARY WATKINS; CENTURION GAMES, INC., BALLY TECHNOLOGIES, INC., d/b/a BALLY GAMING EQUIPMENT AND SYSTEMS; SED GAMING; and CMG-SAL LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This action concerns an allegedly illegal gaming operation conducted by defendants in Triana, Alabama from June through December of 2006.  Plaintiff, Vicki Wright, who sues on behalf of herself and a putative class, seeks recovery of alleged gambling losses sustained when playing electronic bingo games at defendants' Triana operation.  The case presently is before the court on plaintiff's motion for certification of a class pursuant to Federal Rule of Civil Procedure 23(b)(3).  Plaintiff seeks class

certification only as to Count One of her "Second Amended Complaint," which asserts claims under Alabama Code § 8-1-150 (1975) (2002 Replacement Volume).[1]

Plaintiff defines the proposed class as consisting of

> [a]ll persons who, from July 18, 2006 to December 31, 2006, suffered any loss, in connection with playing of electronic games conducted at the VFW facility in Triana, Alabama, but excluding (1) all judicial officers of the State of Alabama and the United States; (2) all officers, directors, or employees of the Defendants, and (3) Counsel for Plaintiffs and Defendants.[2]

Defendant Bally Technologies, Inc., doing business as "Bally Gaming Equipment and

---

[1] The statutory provision cited in text reads as follows:

(a) All contracts founded in whole or in part on a gambling consideration are void. Any person who has paid any money or delivered any thing of value lost upon any game or wager may recover such money, thing, or its value by an action commenced within six months from the time of such payment or delivery.

(b) Any other person may also recover the amount of such money, thing, or its value by an action commenced within 12 months after the payment or delivery thereof for the use of the wife or, if no wife, the children or, if no children, the next of kin of the loser.

(c) A judgment under either subsection (a) or (b) for the amount of money paid, thing delivered, or its value is a good defense to any action brought for such money, thing, or its value under the provisions of the other subsection.

(d) A judgment recovered under the provisions of this section is a defense to any proceeding on any garnishment served after the recovery of such judgment, and the court may make any order staying proceedings as may be necessary to protect the rights of the defendant.

Ala. Code § 8-1-150 (1975) (2002 Replacement Vol.).

[2] *See* doc. no. 102 (Amended Motion to Certify Class).

2

Systems" (hereafter, "Bally"), filed a response in opposition to plaintiff's motion for class certification.[3]   The remaining defendants — the so-called "Department of Alabama Veterans of Foreign Wars," G2, Inc., also known as "G2 Operations, Inc.," Gary Watkins, Centurion Games, Inc., SED Gaming LLC, and Camden Montgomery Group-Sal LLC — did not respond to the motion.

## I. SUMMARY OF RELEVANT FACTS

From June through December of 2006, all defendants jointly conducted a gaming operation in Triana, Alabama.   During the period that the operation was conducted, it generated revenue[4] exceeding $5.3 Million Dollars.[5]   Although defendants allegedly operated the electronic games for the benefit of the Veterans of Foreign Wars ("VFW"), a charitable, non-profit organization, the VFW received less than one percent of the revenue generated by the operation — a total of $51,325.12.[6]

On or about December 7, 2006, the Sheriff of Madison County, Alabama directed the VFW to cease all operations at the Triana facility, citing the holding in *Barber v. Jefferson County Racing Association*, 960 So. 2d 599 (Ala. 2006), as the

---

[3] *See* doc. no. 90 (Memorandum In Opposition to Plaintiff's Motion for Class Certification).

[4] "Revenue" includes all money taken into the operation after payment of prizes to patrons. This figure represents the sum of all revenues earned by all of the defendants from late June until early December as a result of the operation of electronic games in Triana, Alabama.

[5] *See* doc. no. 71 (Evidentiary Material in Support of Plaintiff's Motion for Class Certification), Ex. 6 (Checks and Cover Letters from Cory Burton to VFW).  The precise figure attributed to the gaming operation is $5,309,488.03.

[6] *See id.*

basis for his order to close the facility.[7]

Plaintiff, Vicki Wright, was a resident of Madison, Alabama in 2006.[8]  She began gambling in Biloxi, Mississippi in 1997 or 1998, and has continued to play electronic games at various gaming facilities since that time.[9]  Between July and December of 2006, plaintiff allegedly played electronic games at defendants' Triana facility on more than twenty occasions.[10]  She claims that, during that period, she suffered a net loss of approximately $44,000.[11]  Although plaintiff admits that she cannot reconstruct from memory how much money she lost or won while playing games at the Triana operation, she claims that her financial documents and personal notes, considered together, reflect a net loss of $44,000.[12]  Her deposition testimony contains the following exchange:

> Q:    [If your bank statement] doesn't say Triana Charity Bingo or Wall Triana Highway or something like that, how do we know other than going through every single entry and all your bank statements for the six-month period during 2006, how do we know that you spent the money on gambling at Triana?
>
> A:    There's different transactions that state the fact and different notes on calendars, in notebooks, different entries that I've had

---

[7] *See* doc. no. 71, Ex. 2 (Deposition of Gary Watkins), at 246-247.

[8] *See* doc. no. 71, Ex. 25 (Declaration of Vicki Wright), at 1.

[9] *See* doc. no. 90, Ex. A (Deposition of Vicki Wright), at 32-33.

[10] *See* Declaration of Vicki Wright, at 1.

[11] *See id.* at 2.

[12] *See* Deposition of Vicki Wright, at 141-43, 151-53, 325-26, 350-51.

along the way.  So take those and they just tend to fit.[13]

When defendants questioned plaintiff about the documentation she provided as proof of her claimed losses, however, she expressed uncertainty about the meaning and accuracy of her own notations.[14]  For example, when asked about the meaning of an entry that read "home equity line, 8,000," plaintiff testified that "[it] looks like [that entry] possibly [refers to the] total of withdrawals maybe.  I'm not 100 percent sure."[15]  When asked whether she was in debt for $8,000 through October of 2006, plaintiff testified, "I'm not sure of the time frame."[16]  When asked whether the records reflecting this debt were accurate, plaintiff stated, "I don't know."[17]  Several months later, plaintiff admitted that most of the money withdrawn from the "home equity line" account may have been used for living expenses, rather than to pay for games of chance on defendants' electronic gambling devices:

> Q:     Well, you see here where it says that you got money out of the home equity line?
>
> A:     Yes.
>
> Q:     It says mostly for bills.  Do you see that?

---

[13] *Id.* at 243-44.

[14] *See id.* at 119-20, 175.

[15] *Id.* at 119-20.

[16] *Id.* at 175.

[17] *Id.*

5

A:     Yes.

Q:     Is that accurate?

A:     Yes, I would say so.  I'm not a hundred percent sure exactly.[18]

Plaintiff also claims to have used money from a Visa credit-card account, as well as a "signature loan" from Redstone Federal Credit Union, to play electronic games at the defendants' Triana facility.[19]  Similar to her home equity line account, however, plaintiff admits that she used the Visa credit card and credit union signature loan to pay bills and other expenses, including gaming at locations other than defendants' Triana facility.[20]

In response to plaintiff's admission that she cannot ascertain the amount of her losses without reviewing each document, line-by-line, defendant Bally compiled a summary of the losses recorded in plaintiff's financial documents and personal notes.[21]  The summary allegedly reflects all of plaintiff's withdrawals from the ATM (automated teller machine) at defendants' Triana facility, together with all references to withdrawals for Triana gaming in plaintiff's personal notes.[22]  According to Bally, plaintiff's records show that she withdrew a total of $15,667.51 from the ATM at

---

[18] Deposition of Vicki Wright, at 348-49.

[19] *See id.* at 356-61.

[20] *See id.*

[21] *See* doc. no. 90, Ex. C (Bally's Summary of Plaintiff's Financial Documentation).

[22] *See id.*

defendants' Triana gaming facility between June and December of 2006.[23] Plaintiff's documents do not itemize any of her winnings. Even so, when a player wins in excess of $5,000, he or she is required to accept an IRS form W2-G for the reporting of such income. The W2-G forms produced by plaintiff show that she won in excess of $72,000 playing electronic games in Triana from September though December of 2006.[24] Subtracting her total bank account withdrawals, along with the amounts reflected in additional notations in plaintiff's calendars, diaries, and other notes, Bally contends that plaintiff's net winnings amount to $56,332.49.[25] However, plaintiff did not report any winnings on her federal or state income tax returns in 2006.[26]

Plaintiff commenced this action in the Circuit Court of Madison County, Alabama in October of 2007, alleging that defendants' gaming operation in Triana was illegal, and seeking on behalf of herself and a putative class recovery of alleged gambling losses sustained when playing defendants' electronic games.[27] Defendants removed the case to this court the following month.[28]

During the discovery phase of the litigation, plaintiff allegedly experienced

---

[23] *See id.*

[24] *See* doc. no. 90, Ex. D (Plaintiff's W2-G Forms).

[25] *See* doc. no. 90, Ex. C (Bally's Summary of Plaintiff's Financial Documentation).

[26] *See* doc. no. 90, Ex. E (Bally's 2006 Alabama and Federal Income Tax Returns).

[27] *See* doc. no. 1 (Notice of Removal and Complaint).

[28] *See id.*

significant emotional difficulty when reviewing the records relevant to her claims.[29] Specifically, when asked if she had attempted to review the records to ascertain whether they were responsive to defendant Bally's discovery requests, plaintiff testified that she was too distraught to review them.[30]  When she tried to review the documents, she became "hysterical" and was unable to complete the task.[31] Significantly, despite her claimed losses and emotional unrest, plaintiff continues to play electronic games at other gaming facilities throughout Alabama.[32]

## II.  DISCUSSION

Rule 23 of the Federal Rules of Civil Procedure governs the certification of class actions.  A plaintiff seeking class certification bears the burden of satisfying all relevant elements of Rule 23.  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009);  *see also Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1187-88 (11th Cir. 2003) (holding that the burden of proof to establish the propriety of class certification rests with the advocate of the class, and the district court has an independent obligation to evaluate whether the requirements of Rule 23 have been met).

---

[29] *See* Deposition of Vicki Wright, at 269-70.

[30] *See id.*

[31] *See id.*

[32] *See id.* at 326-27, 333-34.

8

The threshold requirements of Rule 23 require a plaintiff to demonstrate that

(1)  the [putative] class is so numerous that joinder of all class members is impracticable;

(2)  there are questions of law or fact common to the class;

(3)  the claims or defenses of the representative party are typical of the claims or defenses of the class; and

(4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In addition to satisfying all of these prerequisites of Rule 23(a), parties seeking class certification must show that the action is maintainable under at least one of the three sub-sections of Rule 23(b).  Here, plaintiff seeks certification under Rule 23(b)(3).  Therefore, she must show "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

## A.    **Rule 23(a)(1):**  *numerosity*

Rule 23(a)(1) requires that the persons comprising the putative class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there are no rigid, numerical guidelines for determining impracticability of joinder, courts have observed that less than 21 persons generally is not adequate to

satisfy the numerosity requirement; more than 40 is adequate; and numbers in between 21 and 40 are given varying treatment. *See Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986 ), *cert. denied*, 479 U.S. 883 (1986); *Martinez v. Mecca Farms, Inc.*, 213 F.R.D. 601, 605 (S.D. Fla. 2002).  A plaintiff need not show the precise number in a proposed class, but she "still bears the burden of making *some* showing, affording the district court the means to make a supported factual finding that the class actually certified meets the numerosity requirement." *Vega*, 564 F.3d at 1267 (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983).

In the present case, plaintiff contends that "[i]t is reasonable to deduce that the number of class members is in the thousands" because, according to her, "[d]efendants were operating 400 gaming machines" and, "on many occasions, nearly every machine [at the Triana, Alabama facility], if not all of them, was being used by a patron."[33]  Even if that assertion is true, plaintiff offers no evidence that all of the players she observed at the Triana, Alabama facility actually incurred a loss, net of their respective winnings.  In order to recover under Alabama Code Section 8-1-150, a plaintiff must show that he or she incurred a loss, and that he or she commenced an action within six months from the date of that loss.  The statute states that:

---

[33] Doc. no. 69, at 25.

> All contracts founded in whole or in part on a gambling consideration are void. Any person who has paid any money or delivered any thing of value lost upon any game or wager may recover such money, thing, or its value by an action commenced within six months from the time of such payment or delivery.

Ala. Code § 8-1-150(a) (1975) (2002 Replacement Volume).

Plaintiff asks the court to draw an inference of numerosity based upon the amount of revenue defendants received from their gambling operation during the six months that it was in business.[34]  Even if the court could infer that the number of patrons who incurred a net loss at the Triana facility is in the thousands, the necessity of extensive factual inquires for identification of the specific members of the proposed class makes class certification improper.  *See Miller v. University of Cincinnati*, 241 F.R.D. 285, 288 (S.D. Ohio 2006) ("Where extensive factual inquiries are required to determine whether individuals are members of a proposed class, class certification is likely improper.").  In order to identify members of the proposed class, plaintiff would need individual proof from each potential class member with regard to losses incurred.  Without such individual proof, there is no reliable way to make a determination as to the size of the class.

**B.     Rule 23(a)(2):** *commonality*

The commonality requirement of Rule 23(a)(2) — *i.e.*, "there are questions of

---

[34] *See id.*

11

law or fact common to the class" — is liberally construed, and it is satisfied when the claims of the prospective class members present common questions of either law or fact. *See Coleman v. Cannon Oil Co.*, 141 F.R.D. 516, 521 (M.D. Ala. 1992).

It should be noted that Rule 23(a)(2)'s requirement that there be "questions of law or fact common to the class" is less stringent than the demand of Rule 23(b)(3) that common questions *predominate* over any questions affecting only individual members. For that reason, the commonality prerequisite of Rule 23(a)(2) is subsumed by Rule 23(b)(3)'s predominance determination. *See, e.g., Sollenbarger v. Mountain States Telephone & Telegraph Co.,* 121 F.R.D. 417, 423 (D. N.M. 1988). Therefore, this court will discuss the commonality issue in Part II(E) of this opinion, *infra*, in the context of Rule 23(b)(3)'s commonality, predominance, and superiority requirements.

## C.    **Rule 23(a)(3):** *typicality*

A class may be certified only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Prado-Steiman ex. rel. Prado v. Bush*, 221 F.3d at 1266, 1279 (11th Cir. 2000). Typicality is satisfied when a plaintiff's claim "arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Sala v.*

12

*National Railroad Passenger Corp.*, 120 F.R.D. 494, 497 (E.D. Pa. 1988). The plaintiff's claims must be sufficiently similar to those of the absent class members to allow the conclusion that the representative will protect the interests of the class he or she represents, and that there are no antagonistic interests between the representative and the proposed class. *See Coleman*, 141 F.R.D. at 522.

Defendant Bally argues that, in order for plaintiff's claims to be considered sufficiently similar to those of the absent class members, plaintiff must show that she actually incurred a net gambling loss at the Triana facility.[35] Bally contends that, because the amount of plaintiff's loss is disputed, plaintiff's claims are not typical of those of absent class members. Specifically, Bally argues that, even though plaintiff claims that she lost approximately $44,000 net of winnings, plaintiff's financial records and personal notes indicate that she actually may have been a net winner.

Having considered the evidentiary submissions of the parties and declarations by plaintiff with regard to her alleged losses at defendants' Triana gaming facility, the court cannot determine, or even approximate, the amount of plaintiff's losses (if any). Consequently, the question of plaintiff's alleged losses is a genuine issue of material fact that must be tried to a jury. Even so, the existence of an issue of fact does not, as defendant alleges, destroy typicality.

---

[35] *See* doc. no. 90, at 26-27.

13

When addressing the typicality issue, the district court must accept the substantive allegations of plaintiff's complaint as true. Even if plaintiff's claim is ultimately unsuccessful because she cannot show that she suffered a net loss, her claim arises from the same course of conduct that gives rise to the claims of other members of the putative class, and it is based on the same legal theory. Therefore, the court can conclude that plaintiff's claims are typical of the class as a whole. Nevertheless, the complexity of the factual dispute regarding the amount of plaintiff's losses foretells the difficulty of resolving this litigation on a class-wide basis, raising issues with regard to predominance and superiority that are addressed in greater detail below.

**D.    Rule 23(a)(4):** *adequacy of representation*

In order to satisfy the requirement of adequate representation, the court must determine two issues: that the plaintiff's attorney is qualified and experienced, and will competently and vigorously prosecute the suit; and that the interests of plaintiff as class representative are not antagonistic to, or in conflict with, other members of the putative class. *See, e.g., Buford v. H & R Block,* 168 F.R.D. 340, 351 (S.D. Ga. 1996) (citing *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir.1985)).

Defendant Bally does not dispute that plaintiff's attorneys are qualified, experienced, and will competently and vigorously prosecute the suit. Nevertheless,

14

Bally raises significant concerns regarding the emotional stability of plaintiff, and her ability to attend to the exigencies of the litigation as a class representative.[36]  Plaintiff has admitted that she suffered from emotional distress, and became hysterical when asked to review documents pertaining to her claims.[37]  Although the court agrees that plaintiff's admission of emotional distress is troubling, the court need not make a determination of her ability to serve as a representative in order to resolve the motion for class certification.

### E.    Rule 23(b)(3)

In addition to the foregoing criteria of Rule 23(a), parties seeking certification of a class must satisfy one of the three subsections of Rule 23(b).  Here, plaintiff seeks certification pursuant to Rule 23(b)(3), which requires the court to find that "the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members, *and that* a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis supplied).

As previously noted, subsection (b)(3) parallels subsection (a)(2), in that both require the existence of common questions of law or fact.  Even so, subsection (b)(3)

---

[36] *See* doc. no 90, at 27, 29.

[37] *See* Deposition of Vicki Wright, at 269-70.

contains the "far more demanding" requirement that common issues "predominate" over individual issues. *Rutstein v. Alvis Rent-A-Car System, Inc.,* 211 F.3d 1228, 1233 (11th Cir. 2000); *see also Fisher v. CIBA Specialty Chemicals Corp.*, 238 F.R.D. 273, 303 (S.D. Ala. 2006) (holding that, even though Rule 23(a)(2) and Rule 23(b)(3) are "superficially similar," the latter's predominance requirement is "far more demanding" than that of the former, and a plaintiff cannot satisfy Rule 23(b)(3) if, as a practical matter, most of the claims will turn on the resolution of individual-specific factual queries).   Moreover, subdivision (b)(3) adds the criterion of "superiority" to Rule 23's list of qualifications for certification.

### 1.    Commonality: Rules 23(a)(2) and 23(b)(3)

Rule 23(a)(2) "does *not* require that *all* . . . questions of law and fact raised by the dispute be common." *Cox v. American Cast Iron Pipe*, 784 F.2d at 1557 (emphasis supplied).  However, the commonality element requires that there be at least one issue affecting all or a significant number of proposed class members. *See Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003).  Defendant Bally concedes, and the court finds, that the issue of defendants' liability for alleged gambling losses under Alabama Code Section 8-1-150 constitutes a question of law that is common to all members of the putative class.  Indeed, Bally states that it "does not dispute that the question of law whether the games were legal must be answered

in order to determine whether there is a right of recovery pursuant to Ala. Code § 8-1-150 and that such question presents common issues of fact and law as to all class members."[38]  Accordingly, this court finds that the commonality requirement of Rule 23(a)(2) is satisfied.  But proof of commonality alone does not end the certification inquiry.  Plaintiff still must show that the common issues predominate over any questions affecting only individual members, and, that a class action is superior to other available methods for the fair and efficient adjudication of the controversy**.**

## 2.    Predominance

There is no precise test for determining whether common questions of law or fact predominate over any issues affecting only individual members of the class. Rather, Rule 23(b)(3) requires a pragmatic assessment of the entire action.  Even so, the Eleventh Circuit has said that:

> Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not sustainable for class certification under Rule 23(b)(3).

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1270 (11th Cir. 2009) (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004)).

Bally also relies on the opinion of the Alabama Supreme Court in *Funliner of*

---

[38] Doc. no. at 2.

*Alabama, LLC v. Pickard*, 873 So. 2d 198 (Ala. 2003), which addressed the issue of class certification of a claim based on Alabama Code Section 8-1-50.  There, the state supreme court overturned a trial court's certification of a class that sought to recoup gambling losses from video-gaming operators.  *Id.*  In evaluating the propriety of class certification under Alabama Rule of Civil Procedure 23(b)(3) — which is, in all essential respects, identical to Federal Rule of Civil Procedure 23(b)(3) — the Alabama Supreme Court examined the elements of the purported class representatives' claims pursuant to Alabama Code Section 8-1-150. *See id.* at 210-11.  Assessing whether individual issues predominated over common questions of law or fact, the Court explained:

> [E]ach plaintiff will be required to establish that he or she played the video-gaming machines, as well as the amount of his or her damages. We note that, based on the testimony before the trial court, there appears little, if any, evidence available to establish objectively who has played the video-gaming machines owned or leased by the defendants or when those persons might have played the machines.  There also appears to be little documentation, if any, to establish the amount of the players' claimed losses.  *Therefore, resolution of these issue, if they can be resolved at all, will require individual testimony.*
>
> . . . .
>
> [I]n order to recover under § 8-1-150, the plaintiffs must establish that they, in fact, filed this action within six months of their playing the video-gaming machines at which they suffered the losses they are seeking to recover.  The plaintiff must also establish that they lost money and the amount of their losses. *See Bryant v. Starkey*, 39 So. 2d

> 291 (Ala. 1949); Ala. Code. § 8-1-150, and cases cited in the
> annotations to that Code section.  Because of the evidentiary problems
> already noted, *numerous individualized inquiries will be required to
> establish plaintiffs' claim under § 8-1-150.*

*Funliner*, 873 So. 2d at 210-11 (emphasis supplied).  In other words, the *Funliner*

Court held that common issues did not predominate over questions affecting

individual members and, therefore, certification was erroneously granted.  *Id.* at 211.

The *Funliner* Court's analysis of the predominance issue in the context of a claim

premised upon Alabama Code Section 8-1-150 is persuasive, and compels the

conclusion that class certification is similarly inappropriate in the present case under

Federal Rule of Civil Procedure 23(b)(3).

Plaintiff cannot recall, and she has not produced documents that record, all of

the occasions on which she played electronic games at defendants' Triana operation.

She cannot recall, and she has no documentation indicating, which machines she

played, or whether those machines were manufactured by defendant Bally.  Although

defendants can prove that plaintiff won more than $72,000 at their Triana facility, the

amount of her losses is much more difficult to ascertain, and is zealously contested

by the parties in this case.  The highly individualized fact issues presented by

plaintiff's claim foretell the evidentiary problems that will arise when evaluating the

claims of each absent class member.  As the Supreme Court of Alabama held in

19

*Funliner*, the individual issues involved in evaluating a claim under Alabama Code Section 8-1-150 predominate over questions of law or fact common to all class members.  Accordingly, class certification is not appropriate in this case.

### 3.   Superiority

This court also must determine under Rule 23(b)(3) whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  The nature of the individual issues, discussed in detail above, leads the court to conclude that a class action is not superior to other available methods of adjudication.  If certified, the class would present an unknown number of individual cases — certainly more than a hundred, and potentially a thousand, or even more — in which each class member would be required to present evidence of the dates on which he or she played a game, which game or games he or she played, and the amount of money won or lost in each game.  Defendants must have the opportunity to properly cross-examine the veracity of the evidence as to these individual fact issues.  Such extensive factual inquiries would necessitate intensive discovery, as well as a mini-trial for each class member.  The impossibility of authentication and cross-examination on a class-wide basis renders the proposed class unmanageable, and certification of a class pursuant to Rule 23(b)(3) improper. *See, e.g., McCarter v. Abbot Laboratories, Inc.*, No. Civ.A 90-050, 1993 WL

20

13011463, *2 (Ala. Ct. App. Apr. 9, 1993) (rejecting a proposed class of consumers of infant formula due to individualized issues that would require mini-trials and render case unmanageable); *In re Phenylpropanolamine (PPA) Products Liability Litigation,* 214 F.R.D. 614, 619 (W.D. Wash. 2003) (finding that the host of mini-trials that would be required to identify members of the proposed class would produce intractable management problems).

In response to Bally's arguments regarding predominance, superiority, and manageability, plaintiff argues that the "fluid recovery," or *cy pres*, model provides a suitable method of resolving the individual issues involved in this case.[39]  "*Cy pres* (sometimes called fluid-class) distribution has traditionally been used in cases in which class members are difficult to identify or where they change constantly." *Powell v. Georgia-Pacific Corp.*, 119 F.3d 703, 706 (8th Cir. 1977).  Under such a model, the court directs the creation of an aggregate fund, then issues notices and allows claims to be made against the fund.  Usually, a substantial amount of unclaimed funds remains.  "In these cases, the court, guided by the parties' original purpose, directs that the unclaimed funds be distributed for the indirect prospective benefit of the class." *Id.* (internal quotation and citation omitted).

Plaintiff argues that this case is well-suited for *cy pres* distribution because the

---

[39] *See* doc. no 69, at 38.

amount of aggregate losses is allegedly known.[40]  Plaintiff proposes that the court should disseminate notice by publication to potential class members through advertisements in two local newspapers.[41]  According to plaintiff's proposed plan, claimants would be allowed an allotted amount of time to "come forward and state their losses by filing a sworn claim."[42]  Unclaimed monies would then be distributed for charitable purposes.  Plaintiff suggests that defendants would not be entitled to cross-examine the veracity of these sworn claims, because "the claims process does nothing to discount Defendants' liability."[43]  Plainly stated, plaintiff argues that once the court determines that defendants are liable for a certain amount in aggregate damages, defendants no longer have any interest in the distribution of that sum.

Plaintiff's effort to bypass the presentation of individualized proof is unpersuasive.  In order to recover under Alabama Code Section 8-1-150, each plaintiff must present proof of both a right of recovery and actual damages.  Specifically, each plaintiff must prove that he or she incurred a loss, and that he or she commenced an action within six months from the time of that loss.  In addition, the Alabama Supreme Court has held that a plaintiff may only recover the amount of

---

[40] *See id.* at 39.

[41] *See id.* at 45-46.

[42] *Id.* at 43.

[43] *Id.*

22

money actually received from him by each defendant under the void gambling contract. *See Motlow v. Johnson*, 39 So. 710, 711 (Ala. 1905) ("[T]he object of the statute would be carried out by holding . . . that the plaintiff may recover against Motlow for the amount received by him of the winnings, and that to hold that plaintiff may recover of the defendants jointly the whole amount lost would be allowing the plaintiff to recover of Motlow money that was never received by him, such a judgment would not place or leave Motlow in status quo.") Therefore, a plaintiff must be able to trace his losses to the pocket of the defendant who or which profited from the loss in order to recover under Alabama Code Section 8-1-150. There is no joint and several liability.

Further, and contrary to plaintiff's position, Alabama Code Section 8-1-150. does not permit the pooling of alleged gambling profits for the purpose of distributing those aggregate profits among the members of the class through a *cy pres* remedy. The *cy pres* doctrine will not alleviate a plaintiff's burden of meeting statutory requirements or dispense with the necessity of individualized proof.[44]

---

[44] According to one reputed legal treatise on the topic of class certification,

[g]enerally, courts have limited use of the [cy pres] doctrine at the certification stage, often of settlement classes, to claims seeking statutory damages. . . . Fluid recovery provides a mechanism for the distribution of damages only if plaintiffs have established liability to class members consistent with the applicable substantive law, and the amount of damages. *Courts have repeatedly rejected the use of fluid recovery as a substitute for individualized proof when the class pursues claims that require proof of actual damages. . . . The purported substitution of the "class as a whole"*

23

Therefore, plaintiff's proposed model cannot overcome plaintiff's deficiency in meeting the Rule 23(b)(3) requirements.   Consequently, the court finds that certification of the proposed class is inappropriate in this case.

### III.  CONCLUSIONS

For all of the foregoing reasons, plaintiff's motion for class certification will be denied.  An appropriate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 24th day of March, 2010.

_____
United States District Judge

---

*for its individual members on damages issues would almost inevitably violate Rule 23, due process, the Seventh Amendment and the Rules Enabling Act; difficulties in proving individualized actual damages more often denote unsuitability for class proceedings than a need for abbreviated proceedings in derogation of important rights.*

2 *McLaughlin on Class Actions* § 8:16 (5th ed. 2008) (emphasis supplied)